The lower Court in a written opinion has clearly set out the issues in this case and has determined them as follows:
"This is a suit on a contract alleged by the plaintiff to have been entered into between him and the two defendants whereby plaintiff was to furnish all material and labor and to acquire the land, about an acre, on which to build the house. The price was to be agreed upon after it was built.
"Plaintiff then alleged in substance that while he had a contract with the owner of the land on which the house was built, he got into a controversy with the owner, and the defendant, Gillette, acquired title to the land, making it impossible for him to comply with that part of his agreement. In the alternative, plaintiff prays that he have judgment for the value of the house, to be secured by act of mortgage.
"Defendant alleges that the materials furnished by plaintiff were worth no more than $284.96 and that they performed labor on this and other buildings to the value of $255.00.
"Neither plaintiff nor defendants kept any records by which the Court can arrive at any conclusion. However, there is no dispute that plaintiff did furnish certain materials that actually went into the house. Plaintiff claims that he furnished labor and materials that went into the house to the value of $543.00. Offsets claimed by defendants amount to $255.00.
"Plaintiff's counsel argued orally and has submitted a memorandum claiming that he has proven that the materials furnished by plaintiff were worth at least $543.00, the amount claimed. Two witnesses testify as to the quantity of materials furnished by plaintiff, — Russell, for the plaintiff, and Smudricks, for the defendant. Another, Mr. Cariker, also testified but it was an estimate based on a house larger than the one here in controversy.
"None of the parties disputes the competency of Mr. Russell. He has been in the building material and general contracting business in this community for many years, and is a man of excellent repute. He testified it would take from nine to ten thousand feet of lumber to construct a building this size as far along toward completion as this one was when the material furnished by plaintiff gave out. We have decided to accept the lowest estimate made by him, that is, nine thousand feet, as well as the lowest estimate of the number of windows, or twelve, eleven rolls of roofing and two doors.
"Taking $45.00 as the average price of the lumber, as testified to by Russell, its value would be $405.00. This value is corroborated by Gillette, one of the defendants, who says that 4500 feet of lumber would be worth $200.00 and some odd dollars. Twelve windows at $4.00 would be $48.00; eleven rolls of roofing at $2.40 per roll would be $26.40, two doors at $1.50 per door would be $3.00, or a total value of material furnished of $482.40.
"We do not overlook the testimony of Smudricks, who testified for defendant. In fact, we have studied it carefully. His estimate may be found of record in a document filed by defendant and it is 4591 feet. He testified that it was about 4500 feet. We are not impressed with the manner in which he arrived at his estimate. For example, he estimates that there are 832 board feet of flooring, simply because there is 832 square feet of flooring space, which he arrived at by multiplying 26 by 32, the dimensions of the house. He allows nothing for wastage, processing or dressing, or for the tongue and groove in the lumber after it is dressed. Assuming that a flooring board originally should be 4 inches wide before dressing, it would certainly be substantially narrower than that after it had been processed and matched, by running through a planer.
"And what is said about the flooring is also true of the studs, siding and the sheeting. Smudrick, calculates that 832 board feet of flooring, processed tongue and grooved, 1044 board feet of siding, processed tongue and grooved, and 1088 board feet of processed sheeting will cover, respectively, 832 square feet of floor space, 1044 square feet of siding space, and 1088 square feet of outside wall space. It simply will not work out that way, and it takes no expert to figure that out. Since we have reached the conclusion that Smudrick's figures on these three items may *Page 281 
not be relied on, we cannot accept his estimate on the joists, studs, sills and plates. We did not find any estimate at all by this document for ceiling joists, rafters, braces, door or window casings.
"The evidence in support of the counterclaim set up by defendants as an offset, in part, to the claim made by plaintiff, is so utterly confused that it is simply impossible for the Court to arrive at any conclusion. Defendants allege, —
"`They have performed labor on this house and on other buildings erected by said plaintiff, amounting to the sum of $255.00, and that said sum equals, if it does not exceed the value of the labor and material now in the house. * * *'
"It is not alleged how much of the labor performed was on this house and how much on other houses, and the testimony leaves the matter in utter confusion. There are cancelled checks, made payable to defendants, Anton, and their employees, aggregating $317.93, running from April 19, 1941, through August 9, 1941. What these checks were given for, the Court cannot determine. The Court listened attentively to the testimony when it was adduced in Court and has read it carefully after it has been transcribed. The burden of proof rests upon defendants to establish with clearness the claims which they have made. This, they have not done. It may be that the defendants have, can assemble and establish some claim against the plaintiff, and for that reason all claims of whatever kind which defendants have or can assert, will be left at large by entering a non-suit.
"Plaintiff prays in the alternative that the amount prayed for be secured by mortgage. This relief cannot be granted.
"Let there be judgment for plaintiff for $482.40, with legal interest thereon from judicial demand until paid, with costs; and let defendants' claims made as an offset in part and such other claims as defendants may have, if any, be dismissed as of non-suit."
From a judgment in accordance with the opinion, defendants are now prosecuting this appeal. The plaintiff did not answer the appeal, therefore, we presume he is satisfied with the judgment he secured.
Defendants contend in this Court that the lower Court erred in arriving at the quantity of lumber used in erecting the house and also complain because the lower Court did not allow the offset pleaded by them. They insist that they should have been allowed credit against plaintiff's claim in the sum of $235 for labor performed for him for which he has never paid them.
A close study of the confusing evidence in the record convinces us that the lower Court was in error in arriving at the quantity of lumber used in erecting the house, and in all other respects the judgment is correct. The lower Court attempted to take the lowest estimate made by Mr. Russell, which it found to be 9,000 feet of lumber. A careful reading of Mr. Russell's testimony on cross-examination reveals that he testified that his first estimate of it could be in error by a thousand feet either way, but he was sure there was at least 8,000 feet of lumber in the house, and we are of the opinion the Court should have accepted this last statement as the correct one. In doing so, the judgment in favor of plaintiff will be reduced $45 in amount. The lower Court has correctly stated that it is impossible to arrive at any definite figure under defendants' claims. Plaintiff admitted he owed defendants for eleven hours' work on one job, but it is not shown what percentage of the entire job (which was a contract job) this eleven hours would be. The job was finished by other labor and it is not shown what amount plaintiff paid for completion of the work. If plaintiff owes defendants any amount for labor, their rights to show it in another suit are fully reserved to them by the judgment of the lower Court.
It therefore follows that the judgment of the lower Court is amended by reducing the award to plaintiff from $482.40 to $437.40, and as amended, it is affirmed; cost of appeal to be paid by appellee. *Page 282